## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

JAMES PAUL DAHL                                                              PLAINTIFF

VS.                                                      CIVIL ACTION: 1:16cv82-RHW

MARSHALL FISHER, *et al.*                                                  DEFENDANTS

### MEMORANDUM OPINION AND ORDER

Before the Court is [44], Defendants' October 6, 2016 motion for summary judgment based on Plaintiff's failure to exhaust administrative remedies prior to filing this lawsuit, and on grounds of sovereign and qualified immunity. Plaintiff filed no response to the motion, and the matter is ripe for ruling. The parties consented to the exercise of jurisdiction by the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, and the case was reassigned to the undersigned for all purposes. [40], [41]

### Facts and Procedural History

James Paul Dahl, inmate # 72584, is a Mississippi Department of Corrections (MDOC) inmate, confined at South Mississippi Correctional Institution (SMCI) where he is serving two life sentences for convictions of capital murder from Jackson County, Mississippi. He entered the MDOC system March 27, 2006, and testified he has been at SMCI since May 2006. Dahl, *pro se* and *in forma pauperis*, filed this prisoner civil rights lawsuit on March 3, 2016,[1] asserting violation of his constitutional rights as a result of various conditions at SMCI. Specifically, Dahl's complaint alleges that gang members and non-gang members are housed together which leads to assaults; that inmates with HIV and other diseases are housed with

---

[1]Dahl dated his complaint February 25, 2016; it was filed by the clerk March 3, 2016.

inmates who do not have the diseases; that when shakedowns are conducted, gang members are allowed back in the unit first and they steal other inmates' property; that the prison posts no guards at the guard towers behind the housing units, which allows outsiders to throw contraband over the fences sometimes resulting in the whole prison being put on lockdown; and that housing units are overcrowded, have roof leaks, and mold.

## Summary Judgment Standard

Rule 56, FED.R.CIV.P., requires that a motion for summary judgment be granted "if the movant shows there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." A material fact is one that might affect the outcome of the suit under the governing law; a genuine dispute exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). On a motion for summary judgment, the Court views the evidence and draws reasonable inferences most favorable to the non-moving party. *Abarca v. Metropolitan Transit Authority*, 404 F.3d 938, 940 (5th Cir. 2005). The party who bears the burden of proof at trial also bears the burden of proof at the summary judgment stage. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).

One seeking summary judgment must identify those portions of the pleadings and discovery on file and any affidavits which he believes demonstrate the absence of a genuine issue of material fact. *Id.*, at 325. If the movant fails to show the absence of a genuine issue concerning any material fact, summary judgment must be denied, even if the non-movant has not responded to the motion. *John v. State of Louisiana*, 757 F.2d 698, 708 (5th Cir. 1985). However, once the movant carries his burden, the burden shifts to the non-movant to show summary judgment should not be granted. The non-movant may not rest upon mere allegations

or denials, but must set forth specific facts showing there is a genuine issue for trial by either submitting opposing evidentiary documents or referring to evidentiary documents already in the record which show the existence of a genuine issue of material fact. *Celotex*, 477 U.S. at 324-325; *Reese v. Anderson*, 926 F.2d 494, 498 (5th Cir. 1991); *Howard v. City of Greenwood*, 783 F.2d 1311, 1315 (5th Cir. 1986) (non-movant "must counter factual allegations by the moving party with specific, factual disputes; mere general allegations are not a sufficient response."). Conclusory allegations, unsubstantiated assertions or the presence of a scintilla of evidence, will not suffice to create a real controversy regarding material facts. *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990); *Hopper v. Frank*, 16 F.3d 92, 97-98 (5th Cir. 1994); *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994).

<u>Discussion</u>

Defendants contend Dahl failed to exhaust administrative remedies as to his claims,[2] and attach as exhibits to their motion the ARP (Administrative Remedy Program) grievances Dahl filed, but did not pursue to completion. In ARP grievance SMCI-16-060, Dahl complained about being housed with gang members, requesting that he be housed in a unit "that does not house any gang organization members," and stating he is in prison because he was at a residence "when two colored gang members were killed and [is] subject to attack ... by gang organizations," when this becomes known. Dahl requested housing "where no gang activity is taking place" and for the suspension of the officer who moved him to Unit B-1 which "practically houses all gang members." [44-1, p. 4] Classification Officer Katherine Blount provided the First Step response to SMCI-16-060 on January 23, 2016, stating that offenders are housed according to custody,

---

[2]Dahl testified about a February 10, 2016 assault, but conceded at the hearing that the claim is unexhausted as he never filed an ARP regarding that incident.

work assignments and medical class, and that Dahl is appropriately housed for his custody, work assignment and medical class. [44-1, p. 7] The affidavit of Joseph Cooley, custodian of ARP records at SMCI, states Dahl received Blount's response January 30, 2016, and did not appeal to the Second Step. [44-1, p. 1]

On June 29, 2016, the Court conducted a *Spears*/omnibus hearing to screen Dahl's case. Dahl testified about a January 2016 shakedown where inmates were strip-searched and sent outside while officers searched their lockers for contraband. He stated by the time he got back to his locker box, $55 worth of his commissary items had disappeared, and he filed an ARP regarding the shakedown. In ARP grievance SMCI-16-061, Dahl complained that he had received a $90.69 commissary order on December 30, 2015, and his goods were in his locker when the January 8, 2016 shakedown occurred. But by the time he got back inside after the shakedown, virtually all the items were gone. Dahl requested compensation for his missing commissary and suspension of the officers responsible for the shakedown. [44-2, pp. 4-5] On January 25, 2016, Warden Marshal Turner provided the First Step response to SMCI-16-061, stating no officers took Dahl's canteen and he would not be paid for his allegedly missing items. Cooley's affidavit states Dahl received the First Step response February 6, 2016, and did not appeal to Step Two. [44-2, p. 1]

In ARP grievance SMCI-16-0663 Dahl complained about overcrowded conditions in the units, leaking roofs and lack of yard call, and requested that the number of inmates in the units be reduced to 60 and that new roofs be installed on all units. [44-3, p. 4] Warden Turner provided the First Step response to the complaint on April 7, 2016, stating the units have long been equipped with double racks to accommodate 120 offenders and this concern would have to be taken to a higher office than his; that recreation is given almost daily absent a major disturbance

or introduction of contraband incident; and leaks can and will be repaired by the prison contract

company.  [44-3, p. 7]  Cooley's affidavit with respect to this grievance states the First Step

response was sent to Dahl twice, on April 28, 2016, and again on August 10, 2016, but no signed

receipt from Dahl was returned to the ARP.  [44-3, p. 1]  Dahl failed to proceed to the Second

Step on this grievance.

**Exhaustion of Administrative Remedies:**

Exhaustion of administrative remedies through the prison grievance system is a

jurisdictional prerequisite for lawsuits filed pursuant to 42 U.S.C. § 1983.  *Wright v.*

*Hollingsworth*, 260 F.3d 357 (5th Cir. 2001).

> No action shall be brought with respect to prison conditions under section 1983 of
> this title, or any other Federal law, by a prisoner confined in any jail, prison, or
> other correctional facility until such administrative remedies as are available are
> exhausted.

42 U.S.C. § 1997e(a).  *See Woodford v. Ngo*, 548 U.S. 81, 84 (2006)(holding "proper exhaustion

of administrative remedies is necessary").  The Fifth Circuit takes "a strict approach" to the

exhaustion requirement.  *See Johnson v. Ford*, 261 Fed.Appx. 752, 755  (5th Cir. 2008).

Exhaustion is mandatory for "all inmate suits about prison life, whether they involve general

circumstances or particular episodes, and whether they allege excessive force or some other

wrong."  *Alexander v. Tippah County, Miss.*, 351 F.3d 626, 630 (5th Cir. 2003)(quoting *Porter v.*

*Nussle*, 534 U.S. 516, 532 (2002)).  Dismissal is appropriate where an inmate has failed to

properly exhaust the administrative grievance procedure before filing his complaint.  *Gonzalez v.*

*Seal*, 702 F.3d 785, 788 (5th Cir. 2012).  Merely initiating the grievance process or putting prison

officials on notice of a complaint is insufficient to meet the exhaustion requirement – the

grievance process must be carried through to its conclusion before suit can be filed under the

Prison Litigation Reform Act.  *Wright*, 260 F.3d at 358.

There is no dispute that Dahl was an MDOC inmate at all times pertinent to this action, or that the MDOC has an administrative remedy procedure (ARP) to address inmates' grievances. The ARP consists of two steps, both of which must be completed to effect exhaustion of administrative remedies. The two-step ARP process of the MDOC begins when the inmate submits his written grievance to the prison's legal claims adjudicator within 30 days of the incident of which he complains. The adjudicator screens the grievance and determines whether to accept it into the ARP process; if accepted, the grievance is forwarded to the appropriate official for a First Step Response. *Howard v. Epps*, 2013 WL 2367880, at *2 (S.D. Miss. 2013). If the inmate is dissatisfied with the First Step Response, he may continue to the second step by completing the appropriate ARP form and sending it to the legal claims adjudicator. The Superintendent, Warden or Community Corrections Director issues the final ruling (the Second Step Response). If the inmate remains unsatisfied, he may then file suit in court.

Although Dahl filed ARP grievances with respect to housing gang members with non-gang members, shakedowns, and living conditions in the unit (overcrowding, roof leaks, mold), the Cooley affidavit and Dahl's ARP records establish that Dahl did not complete the second step of the ARP procedure on any of them. To exhaust available remedies, an inmate must pursue grievances through both steps of the procedure. *Greenwood v. King*, 2010 WL 3239177, at *2 (S.D. Miss. Aug. 13, 2010). The Prison Litigation Reform Act (PLRA) requires exhaustion of available remedies prior to filing suit under 42 U.S.C. § 1983. *Ferrington v. Louisiana Dep't of Corr.*, 315 F.3d 529, 531 (5th Cir. 2002) (citing *Booth v. Churner*, 532 U.S. 731, 741 n. 6 (2001)). As the Court stated in *Wilson v. Epps*, 776 F.3d 296, 301 (5th Cir. 2015):

> Section 1997e's exhaustion requirement is satisfied only if the prisoner "pursue[s] the grievance remedy to conclusion." *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001). This requirement does not fall by the wayside in the event that the prison fails to respond to the prisoner's grievance at some preliminary step in the grievance process. Instead, the prison's failure to timely respond simply entitles

> the prisoner to move on to the next step in the process.  Thus it is only if the
> prison fails to respond at the *last* step of the grievance process that the prisoner
> becomes entitled to sue, because then there is no next step (save filing a lawsuit)
> to which the prisoner can advance.  This is true both under the terms of the
> program ... and as a matter of the law of this circuit.

(emphasis in original, citations omitted).  Because the evidence before the Court shows Dahl has

not exhausted administrative remedies as to his claims regarding housing gang members with

non-gang members, shakedowns, and living conditions in the unit (overcrowding, roof leaks,

mold, yard call), those claims must be dismissed.

**Sovereign Immunity:**

Defendants assert they are entitled to immunity with respect to all Plaintiff's claims.  All

the Defendants Dahl sued in this case are employees of the MDOC;[3] as such, they assert

sovereign immunity protects them from Dahl's official capacity claims against them for money

damages.  The Eleventh Amendment to the United States Constitution "bars an individual from

suing a state in federal court unless the state consents to suit or Congress has clearly and validly

abrogated the state's sovereign immunity."  *Perez v. Region 20 Educ. Service Center*, 307 F.3d

318, 326 (5th Cir. 2002).  Mississippi has not waived its right to sovereign immunity.[4]  Sovereign

immunity is a jurisdictional bar that, absent waiver, prohibits a federal court from hearing a claim

against a state and its agencies and instrumentalities, regardless of the nature of the relief sought

or whether the claim is based on federal or state law.  *Pennhurst State School & Hosp. v.

Halderman*, 465 U.S. 89, 100 (1984); *McDonald v. Board of Mississippi Levee Com'rs*, 832 F.2d

---

[3]Marshall Fisher is the Commissioner of the MDOC; Jacqueline Banks is the Superintendent at
SMCI; Marshall Turner is SMCI Area II Warden; Katherine Blount is the Classification Officer at SMCI;
Anthony Beasley, Kenneth Mayo and Faytonia Johnson are corrections officers at SMCI; and Joseph
Cooley is Director of the Administrative Remedy Program at SMCI.

[4]"Nothing contained in this chapter shall be construed to waive the immunity of the
state from suit in federal courts guaranteed by the Eleventh Amendment to the Constitution of the United
States."  MISS. CODE ANN. § 11-46-5(4).

901, 906 (5th Cir.1987) (quoting *Crane v. Texas*, 759 F.2d 412, 415 (5th Cir. 1985)) ("Eleventh

Amendment immunity is a jurisdictional issue that 'cannot be ignored, for a meritorious claim to

that immunity deprives the court of subject matter jurisdiction of the action.'").  Sovereign

immunity extends to any state agency or entity deemed to be an "arm of the state."  *Perez*, 307

F.3d at 326.  The MDOC is an arm of the State of Mississippi.  *Williams v. Mississippi Dept. of

Corrections*, 2012 WL 2052101, *1-2 (S.D. Miss. 2012).  Because a suit against a state official in

his or her official capacity "is no different from a suit against the State itself," sovereign

immunity also protects state officials from suit under 42 U.S.C. § 1983.  *Will v. Michigan Dept.

of State Police*, 491 U.S. 58, 71 (1989)); *Dandridge v. Mississippi*, 2009 WL 4940105, at *5

(S.D. Miss. 2009).  Sovereign immunity protects the MDOC, as well as its officers and

employees from monetary damages claims against them in their official capacities.  *Williams*,

2012 WL 2052101 at *1-2; *Yul Chu v. Mississippi State University*, 901 F.Supp.2d 761, 771

(N.D. Miss. 2012).  The Court finds sovereign immunity bars Dahl's official capacity claims for

monetary damages against all Defendants in this case.

**Qualified Immunity**

State officials can be sued for damages under § 1983 in their individual capacities even

though the claim may arise out of official responsibilities, however they "are entitled to assert the

defense of qualified immunity for all acts and omissions which occur in the course of their

official duties."  *Gagne v. City of Galveston*, 805 F.2d 558, 559 (5th Cir. 1986).  The doctrine of

qualified immunity strikes a balance between the need to hold public officials accountable for

exercising power irresponsibly, and the need to shield from harassment, distraction and liability

those officials who perform their duties reasonably.  Qualified immunity protects government

officials from liability for civil damages unless their conduct violates "clearly established

statutory or constitutional rights of which a reasonable person would have known."  *Pearson v.*

*Callahan*, 555 U.S. 223, 231 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

Federal courts review qualified immunity claims under a two-step analysis, considering (1) "whether the facts alleged, taken in the light most favorable to the party asserting the injury, show the officer's conduct violated a constitutional right" and (2) "whether the right was clearly established." *Price v. Roark*, 256 F.3d 364, 369 (5th Cir. 2001) (citing *Saucier v. Katz,* 533 U.S. 194, 201 (2001)); *McClendon v. City of Columbia*, 305 F.3d 314, 322-23 (5th Cir. 2002).  When the allegations fail to establish that the officer violated a constitutional right, the officer is entitled to qualified immunity; if the allegations could make out a constitutional violation, the Court must determine whether the right was clearly established, *i.e.*, whether it would be clear to a reasonable officer that his conduct was unlawful in the circumstances then existing.  *Price*, 256 F.3d at 369.  "Even if an official's conduct violates a constitutional right, [he] is entitled to qualified immunity if the conduct was objectively reasonable." *Salas v. Carpenter*, 980 F.2d 299, 310 (5th Cir. 1992).  "If reasonable public officials could differ on the lawfulness of the defendant's actions, the defendant is entitled to immunity." *Id.* (citing *White v. Taylor*, 959 F.2d 539, 544 (5th Cir.  1992)).  Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).  The Plaintiff bears the burden of proving qualified immunity does not apply, *i.e.*, once a § 1983 defendant pleads the defense and shows he is a governmental official whose position involves the exercise of discretion, the Plaintiff must prove the official's conduct violated clearly established law. *Salas*, 980 F.2d at 306; *Thompson v. Upshur County*, *TX*, 245 F.3d  447, 456 (5th Cir. 2001).  That is, when immunity is properly asserted, the plaintiff "must shoulder the burden of pleading a *prima facie* case, including the obligation of alleging 'detailed facts supporting the contention that the plea of immunity cannot be sustained.'" *Lynch v. Cannatella*, 810 F.2d 1363, 1376 (5th Cir. 1987) "Unless the plaintiff's allegations state a claim of violation of clearly established law,

a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  For the reasons which follow, the Court finds Dahl has failed to carry his burden.

Dahl's complaint that inmates who are HIV positive or who have Hepatitis C are housed with inmates who do not have the diseases does not state a constitutional claim.  Dahl has identified no constitutional right not to be housed with inmates with HIV or Hepatitis C.  Inmates have no constitutional right to a specific classification or housing assignment; these are matters left to the discretion of prison officials.  *See Tubwell v. Griffith*, 742 F.2d 250, 253 (5th Cir. 1984) ("the classification of inmates is the responsibility of the Department of Corrections and an inmate has no right to a particular classification"); *McCord v. Maggio*, 910 F.2d 1248, 1250 (5th Cir. 1990) (prison officials make decisions regarding the housing of inmates); *Meachum v. Fano*, 427 U.S. 215 (1976); *Olim v. Wakinekona*, 461 U.S. 238, 249-50 (1983).  Because Dahl has failed to state a constitutional violation, this claim will be dismissed and will count as a strike.

Dahl's complaint about unmanned guard towers is accompanied by neither allegation nor proof that this condition resulted from any prison policy "promulgated or implemented by the policy-making official, of deliberate indifference to the risk of understaffing and that this policy caused his injury." *White v. Cooper*, 2009 WL 1230008 at *4 (W.D. La.).  Dahl has alleged only that the towers were unmanned, which allows persons outside the prison to throw contraband over the walls into the prison, which sometimes resulted in the entire facility being put on lockdown.  "Evidence of understaffing, without more, is not proof of official policy." *Hood v. Itawamba County, Miss.*, 819 F.Supp. 556, 566 (N.D. Miss. 1993).  Furthermore, Dahl has identified no constitutional right to be free from lockdowns during his incarceration.  See *Hernandez v. Velasquez*, 522 F.3d 556, 562 (5th Cir. 2008) (finding no constitutional violation in suspected gang-affiliated prisoner's lockdown for 13 months due to prisoner's lack of a liberty

interest in his custodial classification, and wide deference accorded prison officials in classifying prisoners' custodial status "to maintain security and preserve internal order.")

Although Defendants persuasively argue the lack of merit in Dahl's unexhausted claims, the Court finds it unnecessary to address the merits of claims which are not properly before the Court.  Based on the foregoing, it is therefore,

**ORDERED AND ADJUDGED** that Defendants' motion for summary judgment is granted, and this case will be dismissed.  A separate judgment will be entered.

**SO ORDERED**, this the 16th day of December, 2016.

/s/ *Robert H. Walker*

ROBERT H. WALKER
UNITED STATES MAGISTRATE JUDGE